THE HONORABLE KAREN A. OVERSTREET
Chapter 7
Place:    Marysville Municipal Court
          1015 State Avenue, Courtroom 1
          Marysville, WA 98270
Hearing Date:   June 12, 2013
Time:          10:30 a.m.
Response Date:  June 5, 2013

## UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE:<br><br>Ronald A Esquibell and Connie J Esquibell,<br><br><br><br><br><br><br><br><br><br>                    Debtor(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CHAPTER 7
CASE NO. 12-18598

TRUSTEE'S NOTICE OF HEARING AND MOTION TO APPROVE SALE FREE AND CLEAR OF LIENS, TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS, CLOSING COSTS, ETC.

### I. NOTICE

    PLEASE TAKE NOTICE that the trustee seeks an order approving the sale of real property as more fully explained below.  The matter IS SET FOR HEARING as follows:

JUDGE:                        Honorable Karen A. Overstreet
DATE:                          June 12, 2013
TIME:                           10:30 a.m.
HEARING PLACE:      Marysville Municipal Court
                                 Courtroom 1
                                 1015 State Avenue
                                 Marysville, WA 98270
RESPONSE DATE:      June 5, 2013

    IF YOU OPPOSE the Motion, you must file your written response with the court clerk at the Bankruptcy Court, United States Courthouse, Room 6301, 700 Stewart Street, Seattle, WA 98101, serve

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA 98110
(206) 842-3638

and deliver copies on the undersigned and the United States Trustee at the United States Courthouse, Room 5103, 700 Stewart Street, Seattle, WA 98101 NOT LATER THAN the RESPONSE DATE, which is June 5, 2013.  Failure to comply with the local rule may be deemed by the court as opposition without merit.

IF NO RESPONSE IS TIMELY FILED AND SERVED, the Court may, in its discretion, GRANT THE MOTION *EX PARTE* PRIOR TO THE HEARING, WITHOUT FURTHER NOTICE, and strike the hearing.

## II.  MOTION FOR SALE FREE AND CLEAR OF LIENS

The trustee, Michael P. Klein, seeks an order allowing him to sell real property located at 7102 229th Street Southwest, Mountlake Terrace, WA 98043 (hereinafter "Property") to Jason William Gooch for $262,500.00 cash at closing, or such higher sum as may be negotiated to close the sale, pursuant to the terms of the Residential Real Estate Purchase and Sale Agreement with attached addendums and amendments (hereinafter "Purchase and Sale Agreement").  A copy of the Purchase and Sale Agreement is attached as Exhibit A.   To the best of the trustee's knowledge Jason Gooch is a good faith purchaser of the subject property within the meaning of 11 U.S.C. §363(m).  The property is being sold on an "As Is" basis without warranties expressed or implied.

The trustee proposes to sell the property free and clear of all liens, judgments, warrants, encumbrances, including, without limitation, the first deed of trust held by Bank of America, N.A.[1] or assigns and second deed of trust held by Green Tree Servicing[2] or assigns pursuant to 11 U.S.C. §363(f).

At the time of closing and through escrow, the trustee proposes to pay a sales commission equal to 6% of the sales price, with such amount to be divided RE/MAX PERFORMANCE PLUS and other agent(s) and/or broker who were involved with this sale.  The trustee also proposes to pay at closing and escrow any undisputed encumbrances, prior liens, excise taxes that become due as a result of this sale, as well as the estate's share of any outstanding real estate taxes that are due in connection with the property, prorated to the date of closing, the cost of purchasing a title insurance policy and any other customary closing costs that are necessary to carry out and complete a sale of the aforementioned

---

[1] The debtor's schedules list the first deed of trust holder as "Bank of America, N.A.," but the recorded documents state that the beneficial first deed of trust interest is being held by "MERS" solely as a nominee for Paramount Equity Mortgage, its successors and assigns.  The beneficial interest was assigned to The Bank of New York Mellon fka The Bank of New York, as trustee for the Certificate holders of The Cwalt, Inc., Alternative Loan Trust2007-18CB Mortgage Pass-Through Certificates, Series 2007-18CB by assignment recorded May 20, 2012 as 201205290444 of official records.

TRUSTEE'S NOTICE OF HEARING AND MOTION
TO APPROVE SALE FREE AND CLEAR OF LIENS,
TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS,
CLOSING COSTS, ETC.    - 2

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA  98110
(206) 842-3638

property.   In many cases the existence of a utility liens or property tax liens is unknown until closing. These liens are usually, but not always, equal to the amounts incurred over several months.   The trustee will pay these liens from the sale proceeds.

To the extent there is not sufficient funds to pay the first deed of trust holder, Bank of America, N.A. and/or assigns, this will be a short sale and, therefore, will be subject to the approval of Bank of America, N.A. or assigns.  It does not appear that the second deed of trust holder, Green Tree Servicing or assigns, will receive any funds, unless the first deed of trust holder allows the other lien holder(s) to receive funds.   The buyer agrees to pay the estate a buyer's premium of 5.5% of purchase price or $20,000, whichever is greater, free and clear of any liens. The trustee will negotiate Bank of America, N.A. or assigns; however, the ultimate terms required by Bank of America, N.A.or assigns are unknown at this time.   Further, should the buyer be unable to close, or should the trustee receive an offer he determines is more favorable to the estate, the trustee reserves the right to, rather than treating the funds to the estate as a buyer's premium, negotiate a carve out under Section 506(c) of the Bankruptcy Code with the secured creditor.   Further, as the final terms of the agreement are unknown, the trustee is requesting authority to use a portion of the buyer's premium to facilitate the sale.   That may include increasing the amount received by the secured creditor, paying a portion of the buyer's closing costs or refunding a portion of the funds to the buyer.

The trustee will hold the remaining proceeds in a trustee estate account for the bankruptcy estate, pending further order of this court.

### III. CONCLUSION

Wherefore, the trustee seeks an order approving the above-described proposal pursuant to 28 U.S.C. §157(b)(2)(A), (M), (N) and (O), to 11 U.S.C. §§363, 522, 541, and to Bankruptcy Rule 2002 and 6004(h).

DATED this __6th___ day of May, 2013.

__ /s/ Michael P. Klein_____
Michael P. Klein, Chapter 7 Trustee

---

[2] The debtor's schedules list a second deed of trust holder in favor of "Green Tree Servicing," but the recorded documents state that the second deed of trust is held by  "MERS" solely as a nominee for Paramount Equity Mortgage, its successors and assigns.

TRUSTEE'S NOTICE OF HEARING AND MOTION
TO APPROVE SALE FREE AND CLEAR OF LIENS,
TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS,
CLOSING COSTS, ETC.     - 3

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA  98110
(206) 842-3638

## Alise Roberts & Company

### RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

### U.S. BANKRUPTCY COURT, WESTERN DIST. OF WASHINGTON AT SEATTLE

THIS AGREEMENT is entered into by and between the below named Buyer and the below named Seller, in his or her capacity as a United States Bankruptcy Trustee for the below named bankruptcy estate. The Buyer agrees to purchase and the Seller agrees to sell the described property pursuant to the following terms and conditions:

BUYER(S): *Jason Gooch*

ADDRESS: *915 N 79th St Seattle 98103*

PHONE: *206 420 7480*

EMAIL: *bubbagooch@gmail.com*

SELLER: **Michael P. Klein- Chapter 7 Bankruptcy Trustee for** Ronald and Connie Esquibell
12-18598

PROPERTY STREET ADDRESS: 7102 229th St SW, Mountlake Terrace WA 98043

LEGAL DESCRIPTION: Attached on Exhibit "A" hereto *$249,000 + gravel \*7/17   $369,00*

PURCHASE PRICE: *~~$350,000 fin cash~~ 20,000 is CPM out*

DATE OF CLOSING: Within 21 days of Bankruptcy Court or lender approval, whichever is later

SELLING FIRM: *Windermere RE*          MLS OFFICE NO. *7918*

SELLING FIRM ADDRESS: *8401 35th Ave NE Sea 98115*

SELLING BROKER: *William Cecil*          MLS LAG *7575*

PHONE AND FAX: *206 522-9600 Fax 527 3818*

EMAIL: *bill4seattle@gmail.com*

LISTING FIRM: RE/Max Performance Plus

24401 104th Avenue SE #201 Kent, WA 98030

206-914-4940 (main line) 206-299-3131

team@aliseroberts.com

EARNEST MONEY AMOUNT: _____ FORM _CASH_ ___ PERSONAL CHECK ___ CASHIERS CHECK ___

Seller Initial _____          Buyer Initial _____ Buyer Initial _____

Exhibit A

1. **No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "as is, where is" and without any representations or warranties of any kind express or implied.

2. **Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the Buyer shall be forfeited to the Seller as the sole and exclusive remedy available to the Seller for such failure. If the earnest money deposit is greater than five percent of the purchase price, only that portion of the earnest money deposit equal to five percent of the purchase price shall be forfeited to the Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture of the earnest money and understand and agree to it.

   Seller Initials_____  Buyer Initials_____ Buyer Initials_____

3. **Financing.** This offer [ ] is [ ]is not conditioned upon Buyer obtaining a [ ] conventional [ ] FHA [✓] VA [ ] USDA [ ] FHA 203k.

4. **Down Payment/Loan Application.** Buyer agrees to pay_____ down, and to make an application, in good faith, within seven days after initial signing of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within 7 (seven) days of initial signing, Seller may retain the earnest money and this Agreement shall terminate.

5. **PROOF OF FUNDS** In the event buyer fails to provide proof of all necessary funds to close; including down payment, closing costs and bankruptcy fee within 48 hours of Sellers acceptance of offer, then this agreement may be terminated by notice from the seller to the buyer and earnest money shall be returned to the buyer.

6. **Financing Deadline/Seller Termination Notice.** If Buyer has not within 30 days after initial signing of this Agreement, given notice that Buyer has obtained financing or waived the financing condition, then this Agreement shall terminate upon the expiration of the 30th day after initial signing. If termination occurs, Seller shall remit the earnest money to the Buyer.

7. **Loan Costs.** Seller will not be responsible for any loan costs, unless agreed to upon mutual acceptance, except (I) such portion of Buyer's costs that Buyer is prohibited from paying pursuant to applicable FHA regulations; and (2) if this sale is financed by a VA loan, the Seller agrees to pay those closing costs Buyer is prohibited from paying pursuant to applicable VA regulations.

8. **Inspections.** The Buyer has fifteen (15) days from the date of initial signing to inspect the premises. Unless the Buyer provides Seller with notice within said fifteen (15) days that

Seller Initial_____  Buyer Initial_____ Buyer Initial_____

Case 12-18598-KAO    Doc 22    Filed 05/06/13    Ent. 05/06/13 13:59:08    Pg. 5 of 14



inspection contingency has been waived, this agreement will be terminated by the seller and earnest money shall be refunded to the buyer. _____(buyer)_____(buyer Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyers inspection or testing of the property.

9. **Defects.** Buyer represents to the Seller that Buyer will fully inspect the property and Buyer assumes the responsibility and risks of all defects and conditions, including such defects and conditions, if any, that cannot be observed by casual inspection. Seller makes no representation or warranties expressed or implied of any kind with respect to, among other things; (a) the dimension, size or acreage of the premises; (b) any applicable governmental laws or regulations; (c) availability of water, sewer or other utilities: (d) the environmental condition of the property; or (e) the existence or non-existence of urea-formaldehyde or asbestos.

10. **Personal Property.** The Seller is a bankruptcy trustee and has no knowledge of whether or not there is any leased personal property on the premises. It shall be up to the Buyer to make an appropriate investigation to determine whether or not there is any leased property on the premises which in any case is not included in the sale. The debtor(s) may claim personal property on the premises, such as non-built-in appliances, drapes, curtains, etc., as exempt property. In such instance that personal property is not included in the sale. The following items have been identified by the debtor as personal property and will be removed from the home prior to closing:

_____
_____
_____

_____(buyer)_____(buyer

11. **Feasibility Study.** If the Purchase and Sale Agreement is subject to a feasibility study and the sale does not close because of any contingency which the Buyer does not waive, then prior to returning any earnest money or promissory note the Buyer shall provide the Seller with a copy of every study, report, analysis or appraisal regarding the property.

12. **SHORT SALE DISCLOSURE** This sale is____/in not___ a short sale. If this is a short sale the following shall apply:
    a. This agreement is contingent upon the seller obtaining written consent from the lienholder(s) within 60 days of mutual acceptance. Seller shall notify buyer of lienholder approval by providing buyer a copy of the lienholder approval letter. If seller fails to reach agreement with lienholder, this agreement shall terminate and earnest money will be refunded to the buyer.

Seller Initial _____          Buyer Initial _____ Buyer Initial _____

   b. Buyer acknowledges that lienholder may have additional addendums and clauses that will be integrated into this agreement. Buyer agrees to return all lienholder required documents within 2 calendar days of receipt. If buyer fails to return required documents, this transaction may be cancelled by the seller and earnest money shall be returned to the buyer. _____(buyer)_____(buyer)

   c. Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA liens, utility liens and appraisal required repairs may not be agreed to by lienholder. Buyer agrees to pay for all costs agreed to by lienholder. The following amounts will be requested from the lienholder on this property:

      i.   Sewer cap fee_____
      ii.  Septic pumping and inspection_____
      iii. Well cert and inspection _____
      iv.  HOA Lien_____
      v.   Utility lien_____
      vi.  Appraisal required repairs_____
      vii. Other_____

   d. Buyer Does_____/Does Not_____request that seller pay up to_____ in closing and other allowable costs.

13. **Hazardous Waste.** The Seller, as a bankruptcy trustee, has no actual personal knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products and asbestos, and has no actual personal knowledge of the violation of any environmental law, regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property of other parties including the trustee's real estate agent, debtor, the debtor's employees and agents, or any other persons or entities shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related to the presence of hazardous waste and the environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste and environmental condition.

14. **Possession.** Buyer shall be entitled to possession upon closing.

15. **Closing.** "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. Seller does not agree to clean the interiors or exteriors of any structures. The sale is "as is, where is."

16. **Escrow Agent.** The transaction shall be escrowed by **First American Escrow-Tammi Habic, 3224 Wetmore Avenue, Everett, WA 98201, phone (425)551-2022 and fax (866)859-0436,** or such other escrow the Seller may designate.

17. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area,

Seller Initial _____          Buyer Initial _____     Buyer Initial _____

including but not limited to zoning; easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property; and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

18. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Sellers choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement if available at no additional cost. If buyer elects to purchase a homeowner or extended title policy, the difference in premium shall be a buyer expense. The preliminary commitment therefor, and the policy to be issued, shall contain no exceptions other than general exclusions and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in paragraph 22 hereof, and this Agreement shall thereupon be terminated

19. **Title Transfer.** Title shall be transferred by the bankruptcy trustee's quit claim deed.

20. **Buyer's Funds to Close.** Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

21. **Closing Costs and Pro-Rations.** Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank.

22. **Sale Information.** After approval by the United States Bankruptcy Court, selling agent is authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the listing and/or selling agents, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report.

23. **Notices.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by selling agent who, for this limited purpose,

Seller Initial _____

Buyer Initial _____   Buyer Initial _____



shall be the agent of both parties. Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the selling agent, unless that is a Saturday, Sunday or holiday, in which event it will commence on the next following business day. Buyer must keep selling agent advised of their whereabouts to receive prompt notification of receipt of a notice. Selling agent has no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement.

24. **Earnest Money Receipt and Disbursement.** Selling agent acknowledges receipt from Buyer of the earnest money as set forth above in the form indicated to be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws). Agent shall not deposit any check until Buyer and Seller both have completed initial signing of this Agreement. Any unpaid loan or sale costs incurred for the Buyer, including credit report, appraisal fee, and escrow cancellation fee, may be paid from the earnest money prior to its disbursement.

25. **Seller Conditions.** This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) the trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax consequences and (2) if the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C. Section 506(c) if there are liens against the property.

26. **Subsequent Offers.** All purchase agreements are subject to approval and order of the U. S. Bankruptcy Court, and there cannot be mutual acceptance until final approval by the Bankruptcy Court. The Seller will apply to the Bankruptcy Court for approval of the sale as set forth herein as soon as reasonably practicable. The Bankruptcy Court hearing generally takes place within four to six weeks of initial signing. Mutual acceptance occurs upon final approval by the Bankruptcy Court. Further, if the trustee receives a better offer on the property prior to or at the Bankruptcy Court hearing, the trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from this Agreement will not change the law. The trustee agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match an opportunity competing offer.

27. **Competing Bids.** If this agreement is the first agreement the Seller has signed regarding the subject property, the Seller, subject to court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. In order to bring this paragraph into effect, Buyer must notify the Seller of its intent to match the third party's offer within 48 hours of receipt from the Seller of written notice of the third party's offer. The Seller's notice shall be in writing and state that the Buyer needs to meet or exceed the third party's price and other

Seller Initial _____      Buyer Initial _____  Buyer Initial _____

terms. Price increases must be in increments of not less than one percent of the original offer. If an offer is received within 24 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest, and best offers at or following the hearing to approve the sale.

28. **Agreement To Purchase And Time Limit For Acceptance.** Buyer offers to purchase the property on the above terms and conditions. Seller has until the close of business on the date set forth below initially to sign this offer. The initial signing is not effective until a signed copy hereof is actually received by the office of the selling agent. If this offer is not so signed, it shall lapse and selling agent shall refund the earnest money to Buyer.

29. **Counteroffers.** If a party makes a counteroffer the other party shall have until 9:00 p.m. on the second day following receipt of the counteroffer to sign it. Signing is only effective by delivering the signed counteroffer to the office of the selling broker.

30. **Commission.** A real estate commission will be paid at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court.

31. **Resale Certificate.** If the subject real property is a condominium, Seller agrees to deliver a Resale Certificate to Buyer within ten (10) days after written lien holder approval has been obtained. Buyer shall be conclusively deemed to have approved said Resale Certificate unless within five (5) days following receipt thereof, Buyer gives notice of disapproval of the same. If Buyer disapproves said Resale Certificate, this Agreement shall terminate and the earnest money shall be refunded to Buyer.

32. **Disclosure Statement.** The Seller is a bankruptcy trustee and therefore exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

33. **Earnest Money Deposit** Selling Broker will deposit any check to be held by Selling Broker as earnest money within three (3) days after receipt or initial signing, whichever occurs later. If the earnest money is held by Selling Broker and is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000.00 or less, the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent. Buyer agrees to pay financing and purchase costs incurred by buyer. If all or part of the earnest money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom.

Seller Initial _____

Buyer Initial _____ Buyer Initial _____

Case 12-18598-KAO    Doc 22    Filed 05/06/13    Ent. 05/06/13 13:59:08    Pg. 10 of 14



**Page | 8**

34. **Lead Paint.** Many used homes, especially those constructed before 1978, contain lead paint. Lead paint is poisonous, especially for children. The Seller has no knowledge with respect to the presence or absence of lead paint in the subject property. The Buyer shall undertake such investigation as he or she deems prudent in the circumstances. The Buyer shall conduct an initial inspection for the presence of lead paint within the seven day time frame set forth in paragraph 7 herein. However, provided that the Buyer obtains specimens for analysis within the original inspection period and delivers them to a laboratory, upon written notice to the Seller within the original seven (7) day period, the Buyer may have an additional ten (1 0) days to obtain the results of a laboratory analysis for the presence of lead. If the Buyer does not obtain such laboratory samples, deliver them to a laboratory and provide the Seller with notice within seven (7) days of initial signing, this contingency will be deemed to be waived on the close of business seven days from initial signing. Unless the Buyer notifies the Seller within such additional ten (10) days period that the property is not acceptable due to the presence of an unsafe levels of lead paint, then this contingency will be deemed waived.

35. **Agency Disclosure and Receipt of Agency Pamphlet.** Buyer acknowledges receipt of the pamphlet entitled The Law of Real Estate Agency. The Northwest Multiple Listing Association requires all estate licensees (agents) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents the Seller, the Buyer, both the Seller and the Buyer, or neither. The listing licensee represents the Seller. The selling licensee represents:

[   ] Seller    [ ✔ ] Buyer    [   ] Neither    [   ] Both.

Selling Licensee Initials Here: _____ Buyer Initials Here: _____ Buyer Initials Here: _____

36. **Addenda.** The following addenda are attached hereto and made a part of this Agreement:

[   ] NONE    [   ] _____

SELLER Michael P Klein, Chapter 7 Bankruptcy Trustee for_ Ronald and Connie Esquibell

SELLER SIGNATURE _____ DATE _____

BUYER SIGNATURE _____ DATE _____

BUYER SIGNATURE _____ DATE _____

BUYER ADDRESS _____

BUYER PHONE and EMAIL _____

Seller Initial _____

Buyer Initial _____ Buyer Initial _____

DocuSign Envelope ID: 46CF82C3-45E7-4DB3-AC1C-64E4CFD18C4A

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _March 1 2013_ 1

between ___Gooch___ ("Buyer") 2

and ___Michael P. Klein-Chapter 7 Bankruptcy Trustee for Esquibell 12-18598___ ("Seller") 3

concerning ___7102 229th St SW, Mountlake Terrace WA 98043___ (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:  5
Buyer agrees to pay up to 5.5% of purchase price or $20,000 whichever is greater, at closing as a carve-out to  6
the estate. This fee must be paid in full at closing and cannot be included in the loan amount. Fee will appear  7
on HUD as Buyer Bankruptcy Fee. Buyer represents that these funds are available and agrees to provide  8
proof of funds within 10 days of mutual acceptance.  9

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.

Initials: BUYER: _____ Date: _3/1/13_   SELLER: _MPK, Ch. 7 Trustee_ Date: _1/1/2013_
BUYER: _____ Date: _____   SELLER: _____ Date: _____

From:2065273818    03-MAR-2013 18:13



Form 22D
Optional Clauses Addendum
Rev. 12/12
Page 1 of 2

©Copyright 2012
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## OPTIONAL CLAUSES ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated **March 1, 2013** _____ 1

between **Jason William Gooch** _____ ("Buyer") 2

and **Trustee for Esquibell** _____ ("Seller") 3

concerning **7102 229th St SW, Mountlake Terrace, WA 98043** ____ (the "Property"). 4

**CHECK IF INCLUDED:** 5

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Broker and Selling Broker make no representations 6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of 7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on 8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and 9
encroachments to Buyer's own satisfaction within the inspection contingency period. 10

2. **Title Insurance.** The Title Insurance clause in the Agreement provides Seller is to provide the then-current ALTA 11
form of Homeowner's Policy of Title Insurance. The parties have the option to provide less coverage by selecting 12
a Standard Owner's Policy or more coverage by selecting an Extended Coverage Policy: 13

  ☐ **Standard Owner's Policy.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to 14
  apply for the then-current ALTA form of Owner's Policy of Title Insurance, together with homeowner's 15
  additional protection and inflation protection endorsements, if available at no additional cost, rather than 16
  the Homeowner's Policy of Title Insurance. 17

  ☐ **Extended Policy.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense to apply for an 18
  ALTA or comparable Extended Coverage Policy of Title Insurance, rather than the Homeowner's Policy 19
  of Title Insurance. Buyer shall pay the increased costs associated with the Extended Coverage Policy, 20
  including the excess premium over that charged for Homeowner's Policy of Title Insurance and the cost 21
  of any survey required by the title insurer. 22

3. ☑ **Property And Grounds.** ~~Maintained. Until possession is transferred to Buyer, Seller shall maintain the~~ 23
~~Property in the same condition as when initially viewed by Buyer. The Keep Property features the buildings~~ 24
grounds; plumbing, heat, electrical and other systems; and all included items. Should an appliance or system 25
~~become inoperative or malfunction prior to transfer of possession, Seller shall either repair or replace the~~ 26
~~appliance with a feature of at least equal quality. Buyer reserves the right to re-examine the Property or~~ 27
within 5 days prior to transfer of possession to verify the foregoing. Buyer and Seller understand and agree 28
that the Listing Broker and Selling Broker shall not, under any circumstances, be liable for the foregoing or 29
~~repairs.~~ 30

4. ☑ **Items Left by Seller.** Any personal property, fixtures or other items remaining on the Property when 31
~~possession is transferred to Buyer shall thereupon become the property of the Buyer, and may be retained or~~ 32
~~disposed of as Buyer determines. However, Seller shall clean the interiors of any structures and remove all~~ 33
trash, debris and rubbish on the Property prior to Buyer taking possession. 34

5. ~~☑ Utilities. The following utilities are available at the Property: (check all that apply)~~ 35

  ☑ public water main; ☑ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ; 36
~~☑ natural gas (specify provider)~~ _____ ~~☑ natural gas; ☑ telephone;~~ 37
  ☑ cable; ☑ electricity; ☐ other _____ . 38

6. ☐ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require 39
the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish 40
Buyer the information below in writing as soon as available. 41

  WALL INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 42

  CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE: _____ 43

  OTHER INSULATION DATA: _____ 44

Initials: BUYER: _____ Date: 2/1/13 SELLER: _____ Date: 3/4/13

BUYER: _____ Date: _____ SELLER: _____ Date: _____

Case 12-18598-KAO    Doc 22    Filed 05/06/13    Ent. 05/06/13 13:59:08    Pg. 13 of 14

©Copyright 2012
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### OPTIONAL CLAUSES ADDENDUM TO
### PURCHASE & SALE AGREEMENT
*Continued*

7. ☐ **Leased Property.** Buyer acknowledges that Seller leases the following items of personal property:    45
     ☐ propane tank; ☐ security system; ☐ satellite dish and operating equipment; ☐ other_____ 46
     Buyer shall assume the lease(s) for the selected item(s) and hold Seller harmless from and against any 47
     further obligation, liability, or claim arising from the lease(s), if the lease(s) can be assumed. 48

8. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any 49
     other association, then Seller shall provide Buyer a copy of the following documents (if available from the 50
     Association) within _____ days (10 days if not filled in) of mutual acceptance: 51
     a. Association rules and regulations, including, but not limited to architectural guidelines; 52
     b. Association meeting minutes from the prior two (2) years; 53
     c. Association Board of Directors meeting minutes from the prior six (6) months; and 54
     d. Association financial statements from the prior two (2) years. 55
     If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not 56
     filled in) of receipt of the above documents or the date that the above documents are due, then this 57
     homeowners' association review period shall conclusively be deemed satisfied (waived). If Buyer gives timely 58
     notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. 59

9. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is 60
     excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the 61
     removal of the Excluded Item(s). Excluded Item(s): 62
     _____ 63
     _____ 64

10. ☑ **E-mail Transmission.** E-mail transmission of any signed original document, and retransmission of any 65
     signed e-mail transmission, shall be the same as delivery of an original, provided that the document is sent to 66
     both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses below. At 67
     the request of either party, or the Closing Agent, the parties will confirm e-mail transmitted signatures by 68
     signing an original document. 69

     **bill4seattle@gmail.com**            **team@aliseroberts.com** 70
     Selling Broker E-mail Address         Listing Broker E-mail Address
     **wedgwood@windermere.com**       **admin@remaxperformanceplus.com** 71
     Selling Firm Authorized E-mail Address     Listing Firm Authorized E-mail Address

11. ☐ **Home Warranty.** Buyer and Seller acknowledge that home warranty plans are available which may provide 72
     additional protection and benefits to Buyer and Seller. Buyer shall order a one-year home warranty as 73
     follows: 74
     a. Home warranty provider: _____ 75
     b. Seller shall pay up to $_____ ($0.00 if not filled in) of the cost for the home warranty, together 76
        with any included options, and Buyer shall pay any balance. 77
     c. Options to be included: _____ 78
     _____ (none, if not filled in). 79
     d. Other._____. 80

12. ☐ **Other.** 81
     82
     83
     84

Initials: BUYER:_____ Date:_____ SELLER:_____ Date:_3/4/17_
        BUYER:_____ Date:_____ SELLER:_____ Date:_____